GARY, VS. STEVENSON.

Where upon the trial of the issue, in a suit for freedom, whether the plaintiff is of the white or negro race, the preponderance of the testimony is that he belongs to the latter, the presumption of law at once attaches that he is a slave, notwithstanding the admixture of African blood may be but small (*Daniel vs. Guy et al.*, 19 *Ark.* 121.)

Where it is a matter of doubt, from the personal appearance of a petitioner for freedom, whether he belongs to the white or negro race, evidence that the woman reputed to be his mother—whom he owned as such and who owned him as her son—was lawfully held in slavery, would repel any presumption in his favor that he was entitled to freedom.

*Appeal from the Circuit Court of Crawford county, in Chancery.*

Hon. FELIX J. BATSON, Circuit Judge.

WALKER & GREEN for the appellant, contended that the evidence established that the complainant is white; that the presumption of law is that all white persons are free, and that presumption cannot be counteracted by any thing short of direct and positive proof that the white person, whose right to freedom is in question, descended from a negro on the mother's side.

Mr. Justice SCOTT delivered the opinion of the Court.

The complainant alleges in his bill, that he is aged about sixteen years, " a white person, and not a negro, or mulatto; born of a white woman in the State of Alabama," with whom his father, Thomas Gary, now a citizen of Caddo Parish in the State of Louisiana, then and for some time before co-habited in the former State; that about the year 1843, his father married another woman, and sent the complainant to the State of

Louisiana by one Armstrong, ".who was to keep and maintain him until his father should see fit to call for him:" that Armstrong died in that State, about two years afterwards, and one Moseley administering upon his estate, found among the papers of the intestate, an instrument of writing, indicating that the complainant "had been placed in his, intestate's charge by the said defendant, Thomas Gary:" whereupon Moseley sent the complainant to Thomas Gary, the defendant, who was then residing in the vicinity of Shreveport in Louisiana, by one Riley Holman; but that Holman, instead of taking complainant to his father, as he had engaged to do, took him to New Orleans, and attempted to sell him, but the complainant " being white and bearing upon his person no marks indicative of the presence of the African blood, he was unable to effect a sale, and he returned to this country, where he then resided, bringing complainant with him." That in the year 1850, Holman sold the complainant as a slave to Remson Stevenson, with whom he remained doing menial services until the middle of May, 1854, when he absconded. " That Holman represented to Stevenson, at the time of the sale, that complainant was the son, or de-. scendant of a slave on his mother's side, but that he was entitled to his freedom, when he attained his twenty-first year; and that Stevenson bought complainant with the understanding that he was to liberate him when he attained his majority." That some few days before the complainant absconded, Jesse Turner, a solicitor of the Court, having been authorized in the premises, demanded the complainant from the defendant, Stevenson, as the slave of the defendant, Thomas Gary, but the former refused to deliver him, claiming him as his own slave; but being in embarrassed circumstances, and fearful that the defendant, Gary, might recover in a suit, or that complainant might establish his right to freedom, he resolved to run the complainant off, and sell him in slavery. And the complainant, finding that each of said defendants Stevenson and Gary, was claiming him as a slave, and that he was in imminent danger of being carried off into some remote section of the country,

absconded, that he might the better have an opportunity to assert his right to freedom in a Court of justice. That he has been informed, and believes that Stevenson has recently given to Charles F. Brown—whom he prays also to be made a defendant—a bill of sale for complainant as a slave. That both Stevenson and Gary are now endeavoring to get possession of complainant, and he is advised that in case either should succeed, the other will, by action of replevin, obtain possession of him, and that either will run him beyond the limits of the State, and leave his adversary his remedy upon the replevin bond. That in other respects " he being a white person," the remedy prescribed by the Legislature for the establishment of freedom in a Court of law is inadequate for his relief, especially as one of the claimants of his person as a slave, is a non-resident, and claims adversely to the other, and that other is insolvent, and unable to respond in damages to complainant for injuries to his person, which he might inflict, and for his services; and besides, the complainant would thus be driven to two suits for his freedom instead of one. He therefore prayed for injunction against all the defendants from commencing any suit for the recovery of the possession of him from any one whomsoever; and from laying hands upon him, or from exercising any control or dominion over him, or from doing any act restraining him of his liberty.

The defendant Gary, by his solicitor, entered his appearance, and agreed to plead, answer or demur at the next term, but failed to do so. The defendant Brown answered, denying that his co-defendant, Stevenson, had conveyed the complainant to him, or executed any bill of sale for him, and disclaimed having any title, claim or interest in, or to the complainant, or in any other wise in the matters in controversy.

The other defendant, Stevenson, answered at length, positively denying both that the complainant was a white person, and that he was a free person, and insisting that he was a mulatto, and that he had African blood in him, and that he was a slave, and was born of a slave woman named Susan, who was

a mulatto, and a slave from her birth, until about one year before answering, when, being then about forty years of age, she was manumitted by Jesse Turner. He admits that he held and claimed the complainant as his slave for life, and denies that he is entitled to his freedom at twenty-one years of age, or at any other time. In a word, his answer is a full and distinct denial of all the material allegations of the bill. A replication was interposed, and the cause was heard upon bill, answer, replication and depositions. The bill was dismissed, and the complainant appealed.

### EVIDENCE FOR COMPLAINANT.

*Doctor Brown*—Was a physician, and well acquainted with Physiology, and knows what distinguishes the white from the black race—had examined the boy Thomas Gary—could discover no trace of the negro blood in his eyes, nose, mouth or jaws—his hair is smooth and of sandy complexion, perfectly straight and flat, with no indications of the crisp or negro curl: his eyes blue, his jaws thin, his nose slim and long. If he had never heard that he was a slave, would not have suspected that there was negro blood in him. Cannot say there is none, but from external appearances cannot distinguish any—very competent for one to possess negro blood in some degree and not be visible from external appearance but in a small degree. Should suppose it would take at least twenty generations from the black blood to be as white as complainant.

*Doctor Wilcox*—Knew complainant seven or eight years—can discover no evidence of negro blood in him. His eyes blue, his hair straight and light, his complexion sandy—cannot say that there is no negro blood in him, but cannot discern any from external appearance. When first recognized the complainant was in possession of the defendant Stevenson. He is the reputed son of a woman who formerly belonged to Holman as a slave.

*Doctor Dibbrell*—Regular graduate of medicine, and practicing physician. Had examined the complainant. From per-

sonal appearances would judge him to possess a small amount of negro blood; not more than a sixteenth, perhaps not so much; would not positively swear he had any at all, so vague are the signs of the admixture of the negro race, in one so remotely removed from the African blood by crossing with the white— has no definite rule by which complainant's case is to be judged, nor is there any reliable one for the certain determination of such a case as his. His hair is sandy and straight, brows white, features regular as in the white race, eyes grey and clear, upper lip rather thicker than in the white race—temperament sanguine—known him five or six years—defendant Stevenson possessed and controuled him as a slave—knows the woman reputed to be his mother—name Susan—said to be a slave— was owned by Holman as a slave—since reputed to belong to Jesse Turner as a slave.

### EVIDENCE FOR DEFENDANT.

*Jesse Turner*—Had known complainant six or seven years— when first knew him, he was in possession of a man named Holman, who also owned and held his mother Susan, as a slave. About the year 1848, deponent bought Susan, the mother of complainant, from Holman, the latter retaining the complainant up to 1850 or 1851, when he sold him to defendant Stevenson. Susan, the mother of complainant, was, as he was informed by Holman, a mulatto and a slave, and so the deponent regarded her. She is of very light complexion, and the complainant is of lighter complexion than the mother—knows nothing personally of the genealogy of Susan—regarded her as a mulatto and a slave, and so treated her: but about two years ago emancipated her in accordance with the laws of Arkansas. Upon the purchase of complainant by Stevenson, he took possession of him as a slave and continued to direct and control him as such until he left him and commenced this suit. Susan is of very light complexion, has straight hair, is slightly swarthy, and has rather thick lips and coarse features. From her appearance, is of the opinion that she has a small amount of Af-

rican blood in her veins—what amount impossible to say, but thinks not more than an eighth or a sixteenth. Her mouth and features, generally, indicate the African blood, and it is from these, outside of the assurances of Holman to deponent, when he bought her, that he concludes that she is of African descent. Susan, so long as he owned her, did not assert any right or claim to freedom, and did not, so far as he remembered, claim ever to have been in any other condition than that of a state of slavery. Did not state upon personal knowledge that complainant was the son of Susan, but he was reputed and understood to be so. Susan always recognized him as such, and he, Susan as his mother. If he had never heard that he had African blood in his veins, he thinks, perhaps, he would not have taken him to be of African descent, but having so heard, and his attention thereby having been called to the matter he had concluded that he was very slightly touched.

*Calvin Phelps*—Has known complainant for about six years—was reputed all the time to be the son of Susan, a slave, formerly owned by Jesse Turner, and to be a slave. Had heard several persons say that he was very white to be a slave. Knew nothing of complainant being the son of Susan, otherwise than by reputation. The woman Susan has little or no appearance of being of the African race except a flat nose and coarse features. Do not know that he could perceive any appearance of African blood in the complainant. He has sandy complexion and light hair, but thinks it a little curly. He has a freckle face and a blue or grey eye.

*Ephraim B. Bishop*—Has been acquainted with complainant about seven years. First knew him when in possession of Holman. The latter proposed to sell Susan and a child of hers, then about one year old, to deponent, but did no offer to sell the complainant, saying that he was Susan's child, but that he did not buy the complainant when he bought Susan and her other child, but that complainant was given in to him, Holman, on that purchase, and that he had promised the former owner of them all to let the complainant go free at twenty-one years

old, and that he should keep him, and carry out the contract with the former owner, as to his liberation at twenty-one, but that, nevertheless, the complainant was a slave for life. He did, afterwards, however, sell the complainant to Dr. Stevenson, the defendant, about the year 1850, in whose possession, as a slave, he has ever since been, until he absconded and instituted this suit. That Susan, at different times, has claimed the complainant as her son, and that they are generally reported to be mother and son. Susan is the same woman that was sold by Holman to Turner, who has since emancipated her.

It is to be observed that the complainant does not allege, in his bill, that he is a free person, otherwise than that he is a white person, born of a white woman: And upon the issue, whether he belonged to the white, or the negro race, we think the preponderance of the testimony is, that he belongs to the latter.

Finding this issue against him, the presumption of law, that he is a slave, at once attaches, notwithstanding the admixture of African blood may be but small; because under our statute, as it has heretofore been construed after full argument and due deliberation, such an one is as much a mulatto as if he were half negro. *Daniel vs. Guy et al.*, 19 *Ark. R.* 121. And so far from there being any thing in the testimony to repel this presumption thus arising, the evidence conduces to show that he is the child of a woman, who, all her life, had been held in slavery, until, a year or two before the filing of the bill, when she was manumitted by her owner. And this, in the absence of any testimony, whatsoever, in the record, questioning, in any way, the lawful slavery of the mother, or indicating any claim to freedom on her part, or on the part of her ancestors in the maternal line, while there is also affirmative proof, corroborative of her lawful slavery, in the proof going to show that she also is a mulatto.

The evidence in the record connecting the complainant with the woman Susan, and that showing her condition of lawful slavery at the time of his birth, is sufficient to repel any pre-

sumption of freedom in favor of the complainant, even upon the supposition, that the evidence, otherwise, left it as a matter of grave doubt, whether he belonged to the white or the negro race; and that is the utmost that could be claimed for him, upon the testimony in the record: (and more than what we think he is entitled to, as we have said) for no one can read it and come to the conclusion that the evidence makes it appear that he belongs to the white race, or descended from that race on his mother's side. (*Daniel vs. Guy et al.*, 19 *Ark. R.* 134.)

The decree dismissing the complainant's bill will be dismissed.